1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

11

CELSA B.,[1]

12
            Plaintiff,

13
       v.

14
ANDREW M. SAUL, Commissioner
15  of Social Security,

16
            Defendant.

17

Case No. 2:19-CV-08869-MAA

**MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

18

19        Celsa B. ("Plaintiff") seeks review of the final decision of the Commissioner

20  of Social Security ("Defendant," "Commissioner," or "Administration") denying her

21  application for Supplemental Security Income ("SSI") pursuant to Title XVI of the

22  Social Security Act.  (Compl., ECF No. 5.)  Pursuant to 28 U.S.C. § 636(c), the

23  parties consented to the jurisdiction of a United States Magistrate Judge.  (ECF Nos.

24  11–12.)  For the reasons discussed below, the Court reverses the decision of the

25  Commissioner and remands the matter for further administrative proceedings.

26  [1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil
27  Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
    Administration and Case Management of the Judicial Conference of the United
28  States.

1    I.    SUMMARY OF ADMINISTRATIVE PROCEEDINGS

2          On December 7, 2015, Plaintiff filed for SSI.  (Administrative Record ("AR")

3    174–79.)  The Commissioner denied the application on August 22, 2016.  (AR 69–

4    73.)  On October 19, 2016, Plaintiff requested a hearing before an Administrative

5    Law Judge ("ALJ").  (AR 78–80.)  ALJ Paul Coulter conducted a hearing on August

6    14, 2018.  (AR at 41–57.)

7          The ALJ issued an unfavorable decision on August 30, 2018.  (AR 15–40.)

8    To reach this conclusion, the ALJ applied the five-step sequential evaluation process

9    for determining whether an individual is disabled.  (AR 22–36.)  At step one, the

10   ALJ stated that Barrera had not engaged in substantial gainful activity since

11   December 3, 2015, the application date.  (AR 23.)  At step two, the ALJ found that

12   Plaintiff had the following severe impairments:  "degenerative disc disease of the

13   cervical spine with cervicalgia, degenerative disc disease of the lumbar spine with

14   lumbago, history of right wrist tenosynovitis and carpal tunnel syndrome, radiculitis,

15   migraine headaches, obesity, mood/depressive disorder and anxiety disorder."  (AR

16   23.)  At step three, the ALJ found that Plaintiff's impairments or combination of

17   impairments did not meet or medically equal the severity of a listed impairment.

18   (AR 24.)  The ALJ assessed Plaintiff's residual functional capacity ("RFC") as

19   follows:

20
          After careful consideration of the entire record, the undersigned finds
21        that the claimant has the residual functional capacity to perform less
          than the full range of motion of light work as defined in 20 CFR
22        416.967(b) except with the following limitations: lift, carry, push or
          pull 20 pounds occasionally, 10 pounds frequently; stand and/or walk
23        for about six hours out of an eight hour day, sit for about six hours out
          of an eight hour day; occasional postural activities; frequent right
24        handling; avoid concentrated exposure to hazards; can maintain
          attention and concentration to perform non-complex routine tasks in a
25        work environment free of fast-paced production requirements, and
          can have occasional interaction with co-workers.
26

27

28   ///

1    (AR 26–27.)  At step four, the ALJ found that Plaintiff was unable to perform any

2    past relevant work as a hair stylist.  (AR 34.)  At step five, the ALJ classified

3    Plaintiff as a younger individual on the date the application was filed, categorized

4    Plaintiff as having a high school education and ability to speak English, and treated

5    the question of transferability of skills as immaterial to the determination of

6    disability.  (AR 35.)  Considering Plaintiff's age, education, work experience, and

7    residual functional capacity, the ALJ concluded that there are jobs that exist in

8    significant numbers in the national economy that Plaintiff could perform—

9    specifically, the occupations of assembler, small products I; electronics worker; and

10   shoe packer.  (AR 35–36.)  Thus, the ALJ concluded that Plaintiff has not been

11   disabled, as defined by the Social Security Act, since December 2, 2015 (the

12   application date).  (AR 36.)

13         Plaintiff requested review with the Appeals Council on October 10, 2018. (AR

14   159–63.)  The Appeals Council denied the request for review on August 27, 2019.

15   (AR 1–8.)  Thus, the ALJ decision became the final decision of the Commissioner.

16

17   **II.    STANDARD OF REVIEW**

18         Pursuant to 42 U.S.C. § 405(g), the Court reviews the Commissioner's final

19   decision to determine whether the Commissioner's findings are supported by

20   substantial evidence and whether the proper legal standards were applied.  *See*

21   *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

22   Substantial evidence means "more than a mere scintilla" but less than a

23   preponderance.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter*

24   *v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  Substantial evidence is "such

25   relevant evidence as a reasonable mind might accept as adequate to support a

26   conclusion." *Richardson*, 402 U.S. at 401.  This Court "must consider the record as

27   a whole, weighing both the evidence that supports and the evidence that detracts

28   from the Commissioner's conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th

1   Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

2   "Where evidence is susceptible to more than one rational interpretation, the ALJ's

3   decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)

4   (citation and quotation marks omitted).

5

6   **III.   DISCUSSION**

7        The single disputed issue is whether the ALJ properly considered Plaintiff's

8   subjective symptom testimony.  (Joint Stip. 4, ECF No. 19.)  Plaintiff argues that the

9   ALJ did not provide sufficient articulated rationale for rejecting her subjective

10  symptom testimony.  (*See id*. at 5–10.)  Defendant asserts that the ALJ provided

11  proper reasons for discounting Plaintiff's testimony.  (*See id*. at 12–17.)

12

13       **A.   Legal Standard**

14       Decisions of the Commissioner follow a five-step sequential evaluation

15  process.  *See generally* 20 C.F.R. §§ 404.1520, 416.920.  An ALJ is required to

16  consider a claimant's impairment-related pain and other subjective symptoms at

17  each step of the sequential evaluation process except the first.  *See* 20 C.F.R.

18  §§ 404.1529(a), (d), 416.929(a), (d).

19       An ALJ must make two findings in assessing a claimant's pain or symptom

20  allegations.  *See* SSR 16-3P, 2017 WL 5180304, at \*3 (Oct. 25, 2017); *Treichler*,

21  775 F.3d at 1102.  "First, the ALJ must determine whether the claimant has

22  presented objective medical evidence of an underlying impairment which could

23  reasonably be expected to produce the pain or other symptoms alleged." *Treichler*,

24  775 F.3d at 1102 (quoting *Lingenfelter*, 504 F.3d at 1036).  "Second, if the claimant

25  has produced that evidence, and the ALJ has not determined that the claimant is

26  malingering, the ALJ must provide specific, clear and convincing reasons for

27  rejecting the claimant's testimony regarding the severity of the claimant's

28  ///

1   symptoms," and those reasons must be supported by substantial evidence in the

2   record.  *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015).

3        "A finding that a claimant's testimony is not credible 'must be sufficiently

4   specific to allow a reviewing court to conclude the adjudicator rejected the

5   claimant's testimony on permissible grounds and did not arbitrarily discredit a

6   claimant's testimony regarding pain.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493

7   (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)

8   (en banc)).

9        Commencing on March 28, 2016, Social Security Ruling ("SSR") 16-3P

10  rescinded and superseded the Commissioner's prior rulings as to how the

11  Commissioner will evaluate a claimant's statements regarding the intensity,

12  persistence, and limiting effects of symptoms in disability claims.  *See* SSR 16-3P,

13  2017 WL 5180304, at *1.  The ALJ's decision in this case is governed by SSR 16-

14  3P because it was issued on or after March 28, 2016.  *See id.* at *13 & n.27.  In

15  pertinent part, SSR 16-3P eliminated the use of the term "credibility" and clarified

16  that the Commissioner's subjective symptom evaluation "is not an examination of an

17  individual's character."  *Id.* at *2; *see also Trevizo*, 871 F.3d at 678 n.5.  These

18  changes are largely stylistic and are consistent in substance with Ninth Circuit

19  precedent that existed before the effective date of SSR 16-3P.  *See Trevizo*, 871 F.3d

20  at 678 n.5.

21

22        **B.    Background**

23        At the August 14, 2018 hearing, Plaintiff provided the following testimony

24  regarding her condition:

25        In 2011, Plaintiff fell at work and her "whole body went towards the left

26  side."  (AR 50.)  She had left knee pain, neck pain, migraines, right tennis elbow,

27  and difficulty with her right wrist.  (AR 48–49.)  She went into a depression and had

28  difficulty focusing due to her emotional problems and neck and lower back pain.

1   (AR 52.)  Plaintiff could sit for about fifteen minutes, stand for less than ten minutes,

2   and walk very little.  (AR 48.)  Plaintiff had pain while sitting and was most

3   comfortable laying down, and did so several times a day.  (AR 50.)  After

4   approximately fifteen minutes of activity, the pain became unbearable and Plaintiff

5   needed to lay down for half an hour.  (AR 51.)  At the time of the hearing, Plaintiff

6   was using a cane—and had been doing so for the prior three months—because she

7   almost fell down several times due to the pain in her knees; previously, she was

8   using a wheelchair.  (AR 48.)  Plaintiff drove when she was not able to get a ride

9   (AR 47), hardly ever cleaned the house (AR 47), and did her own laundry (AR 47–

10  48).  Her daughters helped with grocery shopping (AR 47) and sometimes would

11  help her dress when she had problems—for example, to put on pants (AR 51).

12  Plaintiff could cook by the microwave (AR 47) and sometimes could make a

13  sandwich for herself, but nothing more complicated (AR 51).

14       In addition to testifying at the hearing, Plaintiff completed a Function Report

15  on May 15, 2016 (AR 225–39), which contained the following statements:

16  Plaintiff could not stand for a long time, her right hand and elbow prevented her

17  from doing her job duties as a hair stylist, and she did not have the strength to cut

18  more than two people's hair per day (AR 229).  She had difficulty performing

19  personal care due to her depression and pain.  (AR 230.)  Plaintiff's daughter

20  reminded her to take her medicine.  (AR 231.)  Plaintiff could prepare meals such as

21  sandwiches or by microwaving frozen foods and could do laundry; however, her

22  depression and back, elbow, and wrist pain prevented her from doing a lot of house

23  and yard work.  (AR 231–32.)  Plaintiff drove when needed, but with someone

24  riding along as she would get confused or lost.  (AR 232.)  She did not like being

25  around people and preferred to be alone.  (AR 233.)  Plaintiff could lift five pounds

26  or less, could walk for ten to twenty minutes, could not pay attention for a long time

27  due to falling asleep from her medication, and walked with a cane.  (AR 234–35.)

28  Plaintiff did not handle stress or changes in routine well.  (AR 235.)

6

C.      **Analysis**

The ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (AR 27.)  However, the ALJ next found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record, and rejected Plaintiff's subjective symptom testimony.  (AR 27.)

Plaintiff argues that the ALJ rejected her testimony solely due to purported lack of objective medical evidence.  (Joint Stip. 8.)  Defendant identifies four reasons that the ALJ rejected Plaintiff's testimony:  (1) Plaintiff's daily activities were inconsistent with her claimed symptoms; (2) there were inconsistencies in Plaintiff's reporting of pain during treatment; (3) Plaintiff's unexplained failure to treat her right wrist since four years prior to her application date; and (4) the objective evidence did not support Plaintiff's statements.  (*Id.* at 12–17.)  As discussed below, the Court finds that these reasons are not legally sufficient to discount Plaintiff's subjective symptom testimony.  In addition, the Court concludes that the ALJ's errors in this regard are not harmless.


1.      Activities of Daily Living

As an initial matter, the parties disagree over whether the ALJ rejected Plaintiff's subjective symptom testimony due to evidence regarding Plaintiff's activities of daily living.  (Joint Stip. 8–10, 16.)

An ALJ may consider activities of daily living in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  An ALJ properly may reject a claimant's subjective symptom testimony if the claimant's conduct or daily activities are inconsistent with the claimant's expressed limitations.  *See, e.g., Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012); *see Bray v. Comm'r of Soc. Sec. Admin.*,

1    554 F.3d 1219, 1227 (9th Cir. 2009).  "Even where those activities suggest some

2    difficulty functioning, they may be grounds for discrediting the claimant's testimony

3    to the extent that they contradict claims of a totally debilitating impairment."

4    *Molina*, 674 F.3d at 1113.  A claimant's testimony regarding daily living activities

5    may undermine a disability claim in two ways:  (1) the activity testimony may

6    contradict other testimony about severity of symptoms, or (2) the activities show that

7    the claimant is able to spend a substantial part of his or her day engaged in physical

8    functions transferable to a work setting.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1165

9    (9th Cir. 2014).

10          To show that the ALJ considered Plaintiff's daily activities in discounting her

11   testimony, Defendant asserts that "the ALJ . . . described that Plaintiff was still able

12   to take care of her own personal care, prepare simple meals and do her own

13   laundry." (Joint Stip. 16.)  To being with, this description does not accurately

14   summarize the ALJ's description of Plaintiff's daily activities on the cited page.

15   Rather, the ALJ stated that "[t]he claimant testified to being able to drive when

16   needed, to preparing simple meals, and to doing her own laundry."  (AR 31.)

17   Moreover, the ALJ did not clearly specify that these daily activities were grounds to

18   reject Plaintiff's subjective symptom allegations.  *See Burrell v. Colvin*, 775 F.3d

19   1133, 1139 (9th Cir. 2014) ("Although the ALJ made findings . . . he never stated

20   that he rested his adverse credibility determination on those findings.").  Indeed, the

21   solitary sentence to which Defendant refers appears to be nothing more than a *non*

22   *sequitur* given that previously in that paragraph the ALJ states that "treatment

23   records and mental status examination results do not support the level of symptoms

24   and limitations that the claimant describes" (AR 31), but does not include Plaintiff's

25   daily activities as a reason to reject Plaintiff's subjective symptom testimony.  Thus,

26   the Court cannot construe the ALJ's general findings as a reason the ALJ discounted

27   Plaintiff's testimony.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)

28   ("We are constrained to review the reasons the ALJ asserts.").

1                                      2.        Inconsistent Statements

2            The ALJ may employ "ordinary techniques of credibility evaluation, such as

3 . . . prior inconsistent statements concerning the symptoms, and other testimony by

4 the claimant that appears less than candid," to weigh a claimant's subjective

5 symptom testimony.  *Ghanim*, 763 F.3d at 1163 (quoting *Smolen v. Chater*, 80 F.3d

6 1273, 1284 (9th Cir. 1996)); *see also* SSR 16-3p, 2017 WL 5180304, at *8 ("[W]e

7 will consider the consistency of the individual's own statements.").  Inconsistencies

8 in the claimant's testimony may provide a clear and convincing ground to discount

9 symptom testimony.  *See Molina*, 674 F.3d at 1112.

10            Defendant argues that the ALJ found three inconsistencies within Plaintiff's

11 reporting of her pain during physical therapy and treatment records.  (Joint Stip.

12 14.)  <u>First</u>, the ALJ's decision states that the records show that on December 5,

13 2016, Plaintiff went to physical therapy where she "report[ed] therapy [was] not

14 helping, and that she still [felt] a lot of pain," but that treatment records on

15 December 7, 2016—just two days later—show Plaintiff reporting "0/10" pain.  (AR

16 29.)  However, a disability claimant is not required to complain of all her symptoms

17 every time she sees a doctor.  *See Trevizo*, 871 F.3d at 680 (finding that a

18 claimant's "denials of fatigue" to her treating physician on some occasions was

19 "not inconsistent with disability" where she otherwise reported weakness or fatigue

20 at more than half of her appointments).  "Occasional symptom-free periods — and

21 even the sporadic ability to work — are not inconsistent with disability."  *Lester v.*

22 *Chater*, 81 F.3d 821, 833 (9th Cir. 1995).  Plaintiff's varying levels of pain do not

23 necessarily invalidate her complaints about her condition.

24            <u>Second</u>, the ALJ noted that while Plaintiff reported that "physical therapy

25 [was] not helping," when the treatment resumed in 2018 the records show that

26 Plaintiff reported the pain was "not that bad" in April 2018.  (AR 29.)  The ALJ

27 does not specifically state when Plaintiff reported that physical therapy was not

28 helping.  The Court found that Plaintiff made such a statement on December 5,

1   2016 (AR 793)—approximately one year and five months before her purported

2   April 23, 2018 inconsistent statement that the pain was "not that bad." (AR 796).

3   The Court fails to see how a statement regarding the efficacy of physical therapy is

4   inconsistent with a patient's progress one year and five months later.  In any event,

5   the ALJ omits Plaintiff's other statements to the physical therapist that day:  that

6   her pain was 6/10, and that she experienced less pain with exercise.  (AR 796.)

7   Moreover, the record contains evidence that Plaintiff's pain level was still high

8   around April 2018:  on April 16, 2018, Plaintiff reported "severe pain" (AR 795);

9   on April 18, 2018, Plaintiff reported 7/10 in pain (AR 796); and on May 1, 2018,

10  Plaintiff reported 7/10 in pain (AR 796).  This purported inconsistency is not a clear

11  and convincing ground to discount Plaintiff's symptom testimony.

12         Third, Defendant contends that the ALJ found an inconsistency with

13  Plaintiff's allegations that she needed a cane to ambulate, as there is no indication

14  that Plaintiff needed a cane to ambulate.  (Joint Stip. 15.)  However, this is not an

15  inconsistency within Plaintiff's statements, but rather an argument regarding the lack

16  of objective medical evidence.

17         Accordingly, Plaintiff's purported inconsistencies are not a clear and

18  convincing reason based on substantial evidence in the record to reject Plaintiff's

19  subjective symptom testimony.

20

21                    3.      Failure to Treat

22         A claimant's "unexplained, or inadequately explained, failure to seek

23  treatment or follow a prescribed course of treatment" is a factor that "can cast doubt

24  on the sincerity of the claimant's pain testimony."  *See Fair v. Bowen*, 885 F.2d 597,

25  603 (9th Cir. 1989); *see also* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v)

26  (providing that an ALJ may consider claimant's treatment for pain or other

27  symptoms in evaluating symptom evidence).

28  ///

10

1    The ALJ found that with respect to Plaintiff's right wrist impairments, an

2  MRI taken on March 2012 reflected a history of right wrist tenosynovitis and the

3  consultative internal medicine examiner from July 2016 noted that Plaintiff had a

4  diagnosis of right wrist carpal tunnel syndrome from 2011, but that "[t]reatment

5  records do not reflect ongoing reports of significant symptoms, treatment or

6  limitations associated with the [Plaintiff's] right wrist . . . ." (AR 30.)  The ALJ,

7  however, does not specifically explain what frequency of treatment would be

8  expected for a claimant with Plaintiff's wrist impairment, or how the frequency of

9  Plaintiff's treatment was deficient.  (*See* AR 30.)  Thus, this reason is legally

10  insufficient because it was not "sufficiently specific" to enable the Court to review

11  it.  *See Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell*, 947 F.2d at 345–46).

12    Moreover, the record does not support the ALJ's statement that Plaintiff

13  received no treatment for her right wrist impairment from her initial diagnosis of

14  carpal tunnel syndrome in 2011.  For example, the record reflects that Plaintiff

15  frequently complained of and received treatment for pain in her right wrist from

16  June 21, 2011 to September 11, 2012.  (*See* AR 312–362.)  The workers'

17  compensation evaluation dated October 17, 2014 stated that Plaintiff's main sources

18  of pain were neck, lower back, wrist, and forearm, and that Plaintiff was taking

19  tramadol 50mg for pain (two to six a day) and hydrocodone for pain (up to two a

20  day).  (AR 286–87.)  As the ALJ notes, the consultative internal medicine

21  examination dated July 20, 2016 stated that in connection with the carpal tunnel on

22  Plaintiff's right wrist, Plaintiff was wearing braces, her symptoms were getting

23  worse using her wrists, she was dropping items, and that on physical examination

24  the Tinel's and Phalen's signs were positive.  (AR 408, 412.)

25    Thus, lack of treatment for Plaintiff's right wrist was not a clear and

26  convincing reason based on substantial evidence in the record to reject Plaintiff's

27  subjective symptom testimony.

28  ///

11

1                    4.        Lack of Objective Medical Evidence

2          An ALJ may consider whether a claimant's subjective symptoms are

3   supported by objective medical evidence, and an ALJ may reject a claimant's

4   subjective testimony if it is inconsistent with the objective medical evidence.  *See*

5   *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)

6   ("Contradiction with the medical record is a sufficient basis for rejecting the

7   claimant's subjective testimony.").  Although an ALJ may consider lack of medical

8   evidence when analyzing Plaintiff's subjective allegations, "lack of medical

9   evidence cannot form the sole basis for discounting pain testimony."  *Burch v.*

10  *Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

11         Even assuming the record supports the ALJ's reasoning regarding the lack of

12  support from objective medical evidence, the other reasons the ALJ identified to

13  discount Plaintiff's subjective symptom testimony are insufficient.  Standing alone,

14  lack of objective medical evidence is a legally insufficient reason to support the

15  assignment of little weight to a claimant's subjective symptom allegations.  *See*

16  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (holding that where

17  ALJ's other reason to reject the claimant's testimony was legally insufficient, the

18  sole remaining reason premised on the absence of objective medical support could

19  not justify an adverse credibility determination); *see also Bunnell*, 947 F.2d at 345

20  ("[A]n adjudicator may not reject a claimant's subjective complaints based solely

21  on a lack of objective medical evidence to fully corroborate the alleged severity of

22  pain.").

23         In sum, the ALJ's decision does not provide specific, clear, and convincing

24  reasons for rejecting Plaintiff's subjective symptom allegations.

25

26                   5.        These Errors Are Not Clearly Harmless

27         "[A] reviewing court cannot consider [an] error harmless unless it can

28  confidently conclude that no reasonable ALJ, when fully crediting the testimony,

1    could have reached a different disability determination." *Marsh*, 792 F.3d at 1173

2    (second alteration in original) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d

3    1050, 1056 (9th Cir. 2006)). "[W]here harmlessness is clear and not a 'borderline

4    question,' remand for reconsideration is not appropriate." *McLeod v. Astrue*, 640

5    F.3d 881, 888 (9th Cir. 2011). An error is harmless if "it is inconsequential to the

6    ultimate nondisability determination," or "so long as there remains substantial

7    evidence supporting the ALJ's decision and the error does not negate the validity of

8    the ALJ's ultimate conclusion." *Molina*, 674 F.3d at 1115 (citations and quotation

9    marks omitted). However, courts in the Ninth Circuit "have been cautious about

10   when harmless error should be found." *Marsh*, 792 F.3d at 1173; *see also, e.g.*,

11   *Molina*, 674 F.3d at 1115–17 (reviewing the Ninth Circuit's harmless error

12   principles in the Social Security context). The party attacking the disability

13   determination bears the burden of showing prejudicial harm, but remand also is

14   appropriate "where the circumstances of the case show a substantial likelihood of

15   prejudice," so that the Administration can decide whether to reconsider the decision.

16   *McLeod*, 640 F.3d at 888 (citing *Shinseki v. Sanders*, 556 U.S. 396, 414 (2009)).

17           The Court cannot conclude that the ALJ's errors were harmless. Plaintiff

18   testified that she could sit for about fifteen minutes, stand for less than ten minutes,

19   and walk very little (AR 48); that she had pain while sitting and was most

20   comfortable while laying down and did so several times a day (AR 50); and that

21   after fifteen minutes of activity, the pain became unbearable and she needed to lay

22   down for half an hour (AR 51). Had the ALJ fully credited Plaintiff's testimony, he

23   could not have found that Plaintiff had the RFC to stand and/or walk for six hours

24   out of an eight-hour workday and sit for six hours out of an eight-hour workday.

25   (AR 26.) The hypotheticals directed to the vocational expert did not contemplate

26   an RFC with a further reduced standing, walking and sitting capacity. (*See* AR 54–

27   57.) Accordingly, the Court cannot deduce whether jobs exist in significant

28   numbers in the national economy for a person with a further reduced capacity to

1    stand or walk.  Because it is uncertain whether the ALJ's errors were

2    inconsequential to the ultimate disability determination, the Court cannot conclude

3    confidently that the ALJ's errors were harmless.  *See Marsh*, 792 F.3d at 1173;

4    *Molina*, 674 F.3d at 1115.

5

6              **D.      Remand for Further Administrative Proceedings**

7              Ninth Circuit case law "precludes a district court from remanding a case for

8    an award of benefits unless certain prerequisites are met."  *Dominguez v. Colvin*,

9    808 F.3d 403, 407 (9th Cir. 2015) (citations omitted).  "The district court must first

10   determine that the ALJ made a legal error, such as failing to provide legally

11   sufficient reasons for rejecting evidence."  *Id.*  "If the court finds such an error, it

12   must next review the record as a whole and determine whether it is fully developed,

13   is free from conflicts and ambiguities, and all essential factual issues have been

14   resolved."  *Id*. (citation and internal quotation marks omitted).

15             Here, all essential factual issues have not been resolved.  Thus, it is

16   inappropriate to credit any testimony as true.  *See Leon v. Berryhill*, 880 F.3d 1041,

17   1046 (9th Cir. 2017).  The record raises factual conflicts about Plaintiff's level of

18   functioning that "should be resolved through further proceedings on an open record

19   before a proper disability determination can be made by the ALJ in the first

20   instance."  *See Brown-Hunter*, 806 F.3d at 496; *see also Treichler*, 775 F.3d at

21   1101 (stating that remand for an award of benefits is inappropriate where "there is

22   conflicting evidence, and not all essential factual issues have been resolved")

23   (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138

24   (9th Cir. 2011) (stating same where the existing record does not clearly demonstrate

25   that the claimant is disabled within the meaning of the Social Security Act).

26             Based on its review and consideration of the entire record, the Court has

27   concluded on balance that a remand for further administrative proceedings pursuant

28   ///

                                            14

1   to sentence four of 42 U.S.C. § 405(g) is warranted here.  It is not the Court's intent

2   to limit the scope of the remand.

3

4   **V.     ORDER**

5          The Court ORDERS that judgment be entered reversing the decision of the

6   Commissioner and remanding this mater for further administrative proceedings.

7          **IT IS SO ORDERED.**

8

9   DATED: December 8, 2020          _____

10                                          MARIA A. AUDERO
                                     UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28